Tommy SMOTHERS, Plaintiff,

v.

**TRACTOR SUPPLY COMPANY, Defendant.**

**No. CIV.A. 5:99CV–256–R.**

United States District Court, W.D. Kentucky, Paducah Division.

April 29, 2000.

John T. Carneal, Paducah, KY, for Tommy Smothers.

Donald Killian Brown, Krauser, Brown & Walsh, Louisville, KY, for CNA Commercial Ins. Co.

Charles D. Walter, Amy Jo Harwood, Boehl, Stopher & Graves, Paducah, KY, for Tractor Supply Co., Inc.

## MEMORANDUM OPINION & ORDER

RUSSELL, District Judge.

This matter is before the Court on Defendant's motion for summary judgment (doc. #19). For the following reasons, Defendant's motion is GRANTED.

### I. FACTS

Plaintiff Tommy Smothers is employed by Rollins Dedicated Carriage Service ("Rollins DCS") as a truck driver. On September 8, 1998, while delivering merchandise, Smothers fell on the premises of a Tractor Supply Store in Whiteville, North Carolina, and injured his back. Tractor Supply Store is a chain of retail stores that sells farm equipment and merchandise. Tractor Supply contracts with Rollins to haul merchandise from their storage facilities to their stores. Under the Service Agreement between Rollins and Tractor Supply, Rollins provides 34 tractors, 48 full-time drivers, one full-time manager, one full-time dispatcher, two full-time yard switchers, and two full-time clerks based at the Tractor Supply facility in Indianapolis, Indiana. Rollins provided the same tractors and personnel at other Tractor Supply facilities in the United States.

Smothers worked exclusively hauling equipment for Tractor Supply out of their Indianpolis facility. That facility is stocked exclusively with Tractor Supply merchandise to be distributed exclusively to Tractor Supply stores. Tractor Supply directs and controls the transportation from its facilities. The truck that Smothers drove was picked up in Murray, Kentucky at a Rollins' facility. He would normally start and end his drives in Murray. Sometimes he would pick up merchandise from other Rollins customers on his way home.

After his injury, Smothers filed for workers' compensation benefits from Rollins, and he was paid until he returned to work in May 1999. He filed this negligence action on September 3, 1999. De-

fendant filed a motion for summary judgement, to which Smothers responded. CNA Commercial Insurance Co., who paid Smothers' workers' compensation benefits for its insured, Rollins, filed an intervening complaint and also responded to the motion.

## II. STANDARD

■ Contrary to Plaintiff's assertions, the Kentucky standard of summary judgment does not apply to a federal court sitting in diversity. In federal court, summary judgment is appropriate where under Fed.R.Civ.P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must carry, the initial burden by "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 342, 88 L.Ed.2d 28 (1986). The moving party can make this showing "by demonstrating that the plaintiff, after an adequate opportunity for discovery, was unable to meet [his or] her burden of proof." *Street v. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir 1989). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the moving party meets its burden, the burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street*, 886 F.2d at 1477. The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of the evidence. To support her position, she must present evidence on which the trier of fact could find for the plaintiff. *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. DISCUSSION

The parties agree that Kentucky's substantive law applies to the claims in this case based on diversity of citizenship jurisdiction. The facts are not in dispute.

■ Analysis of Defendant's motion for summary judgment depends on the meaning of two provisions of the Kentucky Workers' Compensation law. See KRS §§ 342.610(2)(b) and 342.690(1). Section 342.610(2)(b) defines "contractor" as a "person who contracts with another ... [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." Section 342.690(1) provides in relevant part:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection 2 of KRS 342.010, whether or not the subcontractor has in fact, secured the payment of compensation.

Under Kentucky law, if Tractor Supply is a contractor, it has no liability in tort to Smothers, an employee who has received compensation through Tractor Supply's subcontractor. *See United States Fidelity & Guar. Co. v. Technical Minerals, Inc.*, 934 S.W.2d 266, 267 (Ky.1996); *Dan-*

*iels v. Louisville Gas and Elec. Co.,* 933 S.W.2d 821, 823 (Ky.Ct.App.1996). The sole issue is whether Tractor Supply is a contractor. Tractor Supply qualifies as a contractor if it contracted to have Rollins "perform [ ] work of a kind that is a regular or recurrent part of the work of the trade, business, occupation or profession of such person." *See* KRS § 342.610(2)(b). The parties dispute whether such transporting merchandise qualifies as "part" of Tractor Supply's "work of the trade, business, occupation or profession," *see id.,* not whether such transportation was regular or recurring.

Although Kentucky cases have not mapped precisely the contours of section 342.610, they do provide useful guidance to the meaning of "regular or recurrent part of the work of the trade, business, occupation or profession." Kentucky case law is clear that activities beyond one's primary business objective may qualify under section 342.610. For example, "rough carpentry" is a regular or recurrent part of the work of the building construction business, even if the contractor never performed rough carpentry with its own employees. *See Fireman's Fund Ins. Co. v. Sherman & Fletcher,* 705 S.W.2d 459, 462 (Ky.1986). Additionally, emissions testing required by the EPA constitutes a regular or recurring part of a coal fired electric plant's business. *See Daniels v. Louisville Gas and Elec. Co.,* 933 S.W.2d 821, 824 (Ky.Ct.App. 1996). Furthermore, at least two courts have recognized that transporting coal is a part of the regular business of coal mining. *See Tom Ballard Co. v. Blevins,* 614 S.W.2d 247, 249 (Ky.Ct.App.1980); *Matthews v. G & B Trucking,* 987 S.W.2d 328, 330 (Ky.App.1998).

The Sixth Circuit also has considered the relationship between the alleged contractor's business and the employee's actions. *See, e.g., Granus v. North Am. Philips Lighting Corp.,* 821 F.2d 1253 (6th Cir.1987). The plaintiff in *Granus* was injured after falling at the defendant's manufacturing plant. *See id.* at 1254.

Plaintiff was engaged in a project "to refurbish and upgrade a glass-melting installation, or 'tank' at the plant." *Id.* at 1254–55. Specifically, the plaintiff operated the saw which cut the firebricks that were used to line the furnace. *See id.* at 1255. The court held that "[t]he evidence established that furnaces at glass factories are rebricked periodically as a matter of maintenance routine." *Id.* The Court concluded, "The relining of furnaces, required periodically as a matter of regular maintenance, is ... a 'recurrent' part of the manufacturing business in which defendant ... is engaged." *Id.* at 1258.

█ Given this case law, "part of ... the business of such person" incorporates more than the primary task of Tractor Supply's company. Its business of "retail operation of farm stores," therefore, may include more than the actual retailing of farm supplies. Transporting merchandise to stores was a regular element of Tractor Supply's retail operation. Transporting merchandise from a central storage facility to retail stores is essential element of operating a nationwide retail chain consisting of many stores. Smothers' activities for Tractor Supply on the day of his injuries fall within section 342.610. Thus, Tractor Supply is a contractor and cannot be held liable in tort for Smothers' injuries.

**IT IS ORDERED:**

Defendant Tractor Supply's motion for summary judgment (doc. # 19) is GRANTED.

Plaintiff Smothers' motion for oral argument (doc. # 27) is DENIED.

The complaint of the Intervening Plaintiff, CNA Commercial Insurance Co., is MOOT.

This case is dismissed with prejudice.

This is a final and appealable order. There is no just cause for delay.